UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| JOHN DOE,<br><br>            Plaintiff,<br>   v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA") and LONG-TERM DISABILITY PLAN FOR EMPLOYEES OF EXCITE, INC.,<br><br>            Defendants.<br>_____/ | No. C 09-01665 LB<br><br>**ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF No. 51]** |

## I. INTRODUCTION

In this ERISA action, Plaintiff John Doe,[1] a former employee of Excite, Inc., moved for summary judgment that he is covered under Excite's life insurance policy (administered by LINA), and that he does not have to pay insurance premiums because he is disabled under the plan. Plaintiff's Summary Judgment Motion, ECF No. 51 at 11-15.[2] Defendants counter as follows: (A) the policy provides for waiver of the premiums and continued coverage for disabled employees only if there is a timely claim within 30 days of disability; (B) Plaintiff should have made – and did not make – a claim in 1997 for

---

[1] United States Magistrate Judge Wayne D. Brazil granted Plaintiff's request to proceed under a fictitious name. *See* Order, Electronic Case Filing ("ECF") 4.

[2] The case initially included a claim for reinstatement of long-term disability benefits under a separate plan after LINA terminated those benefits in August 2008. *See* Complaint, ECF No. 1. Subsequently, LINA reinstated benefits retroactively, mooting the claim. *See* ECF No. 25 at 2.

the waiver of the premiums and continued coverage, and thus his coverage under the policy lapsed; and (C) Excite cancelled the policy in June 1999, and requiring LINA to provide coverage now is actual and substantial prejudice under California's notice-prejudice rule, which allows an insurer to avoid liability based on untimely notice of a claim only if the insurer shows actual, substantial prejudice due to the late notice. Defendants' Opposition, ECF No. 54 at 1-2.

The Court **GRANTS IN PART** Plaintiff's Summary Judgment Motion. The policy did not require the insured to file a notice of claim within 30 days. In any event, notice was effective. There is some evidence that LINA had notice: the Social Security Administration found Doe disabled effective January 31, 1997; LINA approved his claim for long-term disability benefits under a separate plan in June 1997; and in April 1999, Excite told Plaintiff that he did not "need to do a thing" to continue his insurance coverage and that "we've already waived the premium." *See* First Amended Complaint, ECF No. 33, ¶¶ 14-19. Regardless, LINA has not shown actual and substantial prejudice from any late notice that might excuse liability under California's notice-prejudice rule.

LINA never determined, however, whether Plaintiff was disabled under the definition of "disabled" in the life insurance policy. LINA did find that Plaintiff was disabled under the long-term disability plan, but the definition of "disabled" in that plan is different than the definition in the life insurance policy. At LINA's request, the Court will remand to allow LINA to determine whether Plaintiff is "disabled" under the policy. *See Mongeluzo v. Baxter Travelnol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir. 1995). If he is, he is entitled to continued coverage under the policy without paying premiums. The parties shall file a joint case management statement in 60 days advising the Court of the plan administrator's decision (or progress toward making that decision).

## II.  ADDITIONAL FACTS

### A. The Relevant Life and Long-Term Disability Insurance Policies

Excite offered employees – including Plaintiff – long-term disability and life insurance policies, both issued and administered by LINA under the name CIGNA Group Insurance. *See* First Amended Complaint, ECF No. 33 at 2 and 8, ¶¶ 4, 8, and 60. This case involves the terms and requirements of those policies. The parties did not file the master policies but instead cite the certificates given to Plaintiff that describe the coverage. *See* ECF Nos. 52-1 and 55-1 at 3. The life insurance certificate

1  states that it "is not the insurance contract" and that the "master policy is the only contract under
2  which benefits are paid." ECF No. 52-1 at 3 (LM-8L82)*; see Bergt v. The Retirement Plan for Pilots*
3  *Employed by MarkAir, Inc.*, 293 F.3d 1139, 1145 (9th Cir. 2002) (discussing interplay between master
4  policy and summary plan document when determining eligibility for benefits). The parties agree that
5  they rely on – and the Court should consider – the certificates, and so that is what the Court will do.

**B. Plaintiff's Disability Leads to Payment of Disability Benefits**

In June 1996, Plaintiff was diagnosed with AIDS. First Amended Complaint, ECF No. 33 at 2, ¶ 14. In February 1997, he went on disability leave and submitted a claim to LINA for long-term disability benefits. *Id.* at 3, ¶¶ 16, 18. On June 20, 1997, LINA approved his claim and has paid him disability benefits since (except during the temporary hiatus). *Id.* at 3, ¶ 19; ECF No. 52-3. Plaintiff also applied for Social Security disability benefits, and the Social Security Administration found him disabled as of January 31, 1997. ECF No. 33 at 3, ¶ 17.

**C. Excite Terminates Plaintiff's Employment and Plaintiff Asks About Life Insurance Policy**

In March 1999, Excite notified Plaintiff that it would terminate his employment in April 1999. *Id.* at 9, ¶ 64. On March 19, 1999, Plaintiff emailed Kristi Dinelli (an HR manager at Excite) about the life insurance policy. ECF Nos. 52-4, 57 at 2, ¶ 4. The policy is excerpted in the next section, but generally, it provides for life and accidental death and dismemberment benefits. ECF No. 52-1 at 6.

At argument, the parties agreed that Excite paid the insurance premiums probably as a percentage of payroll. If an employee's coverage ended (for example, when employment ended), the employee could convert the policy to an individual policy and thereafter pay the premiums. *Id.* at 4. The policy also provides that premiums are not required for disabled participants who give proof of disability, are disabled for 9 months, and become disabled before age 60. *Id.* at 11. At argument, the parties agreed that once an employee gives proper proof of disability under the policy, the policy remains in effect as to the disabled employee even if the employer terminates the policy or the disabled employee's employment unless certain events happen (such as the disability ends or the insured turns 65 or retires). *Id.* To reiterate, this means the following: (1) a non-disabled terminated employee may convert the policy to an individual policy and pay premiums; and (2) the disabled employee retains coverage (and premiums are waived) even if the employer later discontinues the policy, goes

ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C 09-01665 (LB)
3

1   out of business, or terminates the disabled employee.

2   In an email titled "waiver of life insurance premium," Plaintiff asked about the provision of the

3   policy that provides that no insurance premiums are required for disabled employees:

> I received the benefits package yesterday. I'll give it a close look next week and let you know if I have any questions.
>
> In the meantime, I DO have a question about the life insurance benefit. Page LM-8L85a of the certificate of insurance that I was given says there is a waiver of premium benefit for disability.
>
> As you know, the carrier (Life Insurance of North America) already has proof of my disability (they are paying my disability claim). I also provided the annual proof of my continuing disability last December, so the proof of disability requirement has been met.
>
> Would you please let me know what I have to do now to continue my life insurance coverage after my termination AND take advantage of the waiver of premium benefit?"

ECF Nos. 52-4, 57 at 2, ¶ 4. On March 23, 1999, Ms. Dinelli replied:

> Regarding the life insurance benefit, you don't need to do a thing! Since we've already waived the premium, even after 4-30-99 you will continue to stay on the Excite life insurance plan through CIGNA. No forms to complete at all.

*Id.* At oral argument, the Court asked whether records might establish whether Excite paid Doe's premiums, or whether they were waived, after Doe became disabled and before Excite terminated his employment. The parties essentially indicated that they could not ascertain anything more.

By letter dated July 17, 2008, CIGNA temporarily suspended Plaintiff's long-term disability benefits effective August 2008. *See* First Amended Complaint, ECF No. 33 at 3 and 5, ¶¶ 19 and 36; ECF No 25 (Cigna reinstated benefits in July 2009). On October 28, 2008, Plaintiff's counsel wrote to CIGNA, acknowledging termination of the long-term disability benefits and asking the following:

> As you may know, [Doe] receives a disability waiver of premium benefit under the life insurance plan sponsored by his former employer, Excite, Inc., and insured by CIGNA. I attach a copy of Excite's email confirmation of the waiver of premium. Because your letter of July 17, 2008, does not mention [the] life insurance waiver of premium benefit, I assume that benefit has not been terminated.

ECF No. 52-5. On January 28, 2009, CIGNA's waiver specialist replied:

> [W]e do not show a Waiver of Premium claim for [Doe].
>
> Please provide us with copy of approval letter as proof [Doe] has a Waiver of Premium claim approved by CIGNA or eligibility information as of [Doe's] last day of work showing he had life insurance with his previous Employer, so we can investigate for Waiver of Premium.

ECF No. 52-6. On March 6, 2009, Plaintiff's counsel responded, expressing surprise at CIGNA's

1  failure to maintain records of the waiver, addressing Kristi Dinelli's March 1999 email confirmation
2  of the waiver, and enclosing the certificate of insurance as proof of coverage. ECF No. 52-7
3  (documents not attached). On March 18, 2009, CIGNA said it was investigating the waiver issue.
4  ECF No. 52-8. On October 14, 2009, LINA's counsel acknowledged that Excite told Plaintiff in the
5  late 1990s that the premium was waived, but stated that in fact, no claim for a waiver was made to
6  LINA and that Plaintiff's insurance coverage thus lapsed in the 1990s. ECF No. 52-9. Plaintiff then
7  filed his first amended complaint and summary judgment motion seeking a determination that he is
8  covered by the policy and is not required to pay premiums because he is disabled. ECF Nos. 33, 51.

### III.  LEGAL STANDARDS

**A.  Summary Judgment Standard**

Summary judgment is proper if the pleadings, the discovery and disclosures on file, and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id.* at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *See id.* at 248-49.

The party moving for summary judgment has the initial burden of identifying those portions of the pleadings, discovery and disclosures on file, and affidavits that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the nonmoving party has the burden of proof at trial, the moving party need point out only "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets this initial burden, the non-moving party must go beyond the pleadings and – by its own affidavits or discovery – set forth specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323. In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587.

**B. Standard of Review Under ERISA**

The parties agree that the policy here is a qualifying ERISA plan and that Plaintiff is a participant who may bring an action "to recover benefits due to him under the terms of his plan." *See* 29 U.S.C. § 1132(a)(1)(B). Generally, the Court reviews a plan administrator's denial of benefits *de novo*. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If, however, a plan gives the administrator discretion to determine eligibility for benefits or to construe the plan's terms, the Court reviews the administrator's decision for abuse of discretion. *See id; Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1102-03 (9th Cir. 2003). LINA does not assert that the policy gives the administrator discretion, and the policy's plain language shows that it does not. Accordingly, the Court reviews *de novo* LINA's denial of benefits.

## IV.  DISCUSSION

There are two issues here: (A) whether there was sufficient notice to LINA of Plaintiff's disability so that if he is in fact disabled, he remains insured and does not have to pay premiums; and (B) if notice was sufficient, whether Plaintiff is "disabled" under the policy. The Court finds notice sufficient but remands for LINA to address whether Plaintiff is disabled under the policy.

**A. Notice To LINA Was Sufficient**

Plaintiff argues that he complied with the notice requirement in the policy's *Waiver of Premium Benefit* provision because he gave proof of disability, was disabled for 9 months, provided annual proof of his disability, and became disabled before age 60. Summary Judgment Motion, ECF No. 52-1 at 11. Defendants respond that the *Payment of Claims* provision also required Plaintiff to file a "notice of claim" within 30 days of disability. Opposition, ECF No. 54 at 3-4.

1. Applicable Law

In its *de novo* review here, the Court interprets the life insurance policy by looking to the plain language of its terms. *See Nelson v. EG & G Measurements Group, Inc.*, 37 F.3d 1384, 1389 (9th Cir. 1994). The Court looks to the explicit language of the provisions and construes each provision consistently with the entire agreement. *See Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997). The Court interprets terms "in an ordinary and popular sense as would a person of average intelligence and experience." *Id.* (quotation omitted). The court construes

ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C 09-01665 (LB)

6

ambiguities in the contracts against the drafter/insurer and in favor of the insured:

> [I]f, after applying the normal principles of contractual construction, the insurance contract is fairly susceptible of two different interpretations, another rule of construction will be applied: the interpretation that is most favorable to the insured will be adopted. The rule is based upon the principle of contract construction that when one party is responsible for the drafting of an instrument, absent evidence indicating the intention of the parties, any ambiguity will be resolved against the drafter.

See *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir. 1990) (citation omitted).

2. Policy Provisions and Parties' Arguments About Notice Requirements

The certificate of insurance has the following provisions. The first 7 provisions are listed in the table of contents by page number as follows. The table of contents then identifies an eighth category called "Description of Coverage; Exclusions" with the additional provisions listed in order below.

1. Individual Insurance: Effective Date; Termination.........................................2
2. Conversion Privilege...........................................................................2
3. Eligible Classes.................................................................................3
4. Schedule of Benefits [includes Life Insurance and Accidental Death & Dismemberment]..................................................................4
5. Life Insurance Benefit [includes Beneficiary]..............................................4
6. Payment of Claims.............................................................................6 [actually 5]
7. General Provisions [includes clerical error]...............................................7 [actually 6]
8. Description of Coverage; Exclusions.......................................................Insert

    Accidental Death and Dismemberment Benefit
    Seatbelt Benefit
    Waiver of Premium Benefit
    Additional Provision for Use With Accelerated Benefits
    Accelerated Benefits, Terminal Illness Benefit, Determination of Terminal Illness

ECF No. 52-1. The document has page numbers on the bottom (1 through 6 only) and separate numbers in the lower left corner that are non-sequential. Essentially, the document is assembled from different sources, depending on what coverage the employer elects.

Plaintiff argues that the *Waiver of Premium Benefit* provision contains the only requirements for waiver of premiums upon an insured's disability. That provision is as follows:

**WAIVER OF PREMIUM BENEFIT**

1. We will not require any further life insurance premiums to be paid for you:
    a) after you have given us proof that you are disabled; and
    b) after you have been disabled for 9 straight months; and
    c) if you became disabled before your 60th birthday.

2. You will be deemed "disabled," as used here, only if you can not do any work for wage or profit.

3. You must give us proof that you are disabled not more than 12 months after you become disabled, and every 12 months after that. If you die before such proof has been given, we will still pay the life insurance benefit, as long as such proof is given not more than 12 months after you become disabled. We may have you examined as often as reasonably necessary while you are disabled, but not more than once a year after two years.

4. You will still be covered for the life insurance benefit. No charge will be made for your premium. If the plan provides other benefits, you will not be covered for them while your premium is waived. The benefit will be the lesser of:
   a) the amount you were covered for when you become disabled; or
   b) the amount you would be covered for if you were not disabled.

5. We will only pay this benefit if written notice of claim is sent to our home office not more than 12 months after your death. Except for the above, all other terms of the plan will apply.

6. This coverage will end when any of these things happen:
   a) 31 days after you are no longer disabled, if premium payments are not resumed.
   b) 31 days after you are no longer eligible, for any reason other than being disabled.
   c) 31 days after you refuse to be examined or fail to provide proof that you are disabled, as required above.
   d) 31 days after the date you attain age 65 or retirement, whichever shall first occur.

7. During this 31 day period, you may apply for an individual life insurance policy. These terms are set forth in detail under Conversion Privilege.

ECF No. 52-1 at 11(paragraph numbers not in original). Plaintiff argues that he complied with these requirements because he gave proof of disability, was disabled for 9 months, provided annual proof of his disability, and became disabled before age 60.

Defendants argue that Plaintiff also had to comply with the *Notice of Claim* and *Proof of Loss* requirements in the *Payment of Claims* provision:

### PAYMENT OF CLAIMS

**Accident/Disability Benefits: Notice Of Claim** - If any covered loss occurs or begins, you must send us written notice within 30 days, or as soon as reasonably possible. The notice should state the subscriber number and your name. This notice should be sent to our home office, in Philadelphia, PA, or to an agent authorized by us. We will then send you claim forms.

**Accident/Disability Benefits: Proof Of Loss -** The claim forms must be sent back to us no more than 90 days after a covered loss occurs or ends, or as soon after that as is reasonably possible. If we have not provided claims forms within 15 days after your notice of claim, send us other proof of loss by the date claim forms are due. The proof of loss should include written proof of the occurrence, type and amount of loss.

*Id.*, ECF No. 52-1 at 7. The argument is that the "Waiver of the Premium Benefit" is a "covered loss" under the *Accident/Disability Benefits: Notice of Claim* section of the *Payment of Claims* provision. Opposition, ECF No. 54 at 3. Under that section, Defendants argue, an insured sends a

written notice of claim for any covered loss (including a claim for waiver of the insurance premium) within 30 days. LINA then sends the claim forms. The insured then completes the forms and sends them back within 90 days under the *Accident/Disability Benefits: Proof of Loss* section. *Id.* at 3-4. Then, according to LINA, an insured seeking a waiver of the premium benefit must comply with the additional four requirements in the *Waiver of Premium Benefit* provision: give proof of disability, be disabled for 9 months, provide annual proof of disability, and become disabled before age 60. *Id.* at 5.

### 3. The Waiver Of Premium Is Not a "Covered Loss" Requiring 30 days' Notice

Looking at the policy's plain language, nothing in the *Waiver of Premium Benefit* provision requires an insured to file a notice of claim under the *Payment of Claims* provision. It requires only:

a. Proof of disability (¶ 1(a)) within 12 months and every 12 months after that (¶ 3);
b. Disability for 9 straight months (¶ 1b).
c. Disability before age 60 (¶ 1c).

Communication with LINA is required only to give "proof" of disability, and there is no mention of or cross-reference to the *Payment of Claims* notice provision to obtain the waiver of the premium. The only mention of a "notice of claim" is in paragraph 5, which requires written notice within 12 months of death of a claim for "this benefit," meaning, the life insurance benefit discussed in the preceding paragraph 4 and on page 4 of the policy. (Defendants do not contest this construction of paragraph 5. *See* ECF No 54 at 6.) The point of the *Waiver of Premium Benefit* provision is that if a person is disabled (¶¶ 1-3), then no premium is paid (¶¶ 1, 3), and the person is paid the life insurance benefit (¶ 4) if a written claim is made not more than 12 months after death (¶ 5).

Defendants' argument – that a waiver of premium is a "covered loss" requiring notice within 30 days after disability under the *Payment of Claims* provision – is not persuasive. Read in the context of the entire policy, *see Richardson*, 112 F.3d at 985, that construction makes no sense. Indeed, the ordinary construction of "covered loss" is that it is a "loss" (like loss of life or a hand) that triggers payment of benefits (like life insurance or accidental death or dismemberment benefits).

Walking through the plan illustrates this. *See supra Table of Contents*. The policy first lays out who is covered and the dollar amount of benefits: (a) life insurance equal to two times salary with a minimum $10,000 and a maximum $185,000; (b) accelerated benefits for terminal illness of the lesser

ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C 09-01665 (LB)
9

1  of 50% of life insurance or $50,000; and (c) accidental death or dismemberment benefits equal to the
2  amount of life insurance. ECF No. 52-1 at 1-6. Then, the *Payment of Claims* provision sets forth the
3  30-day notice procedure for "covered losses." *Id.* at 7. A general provision follows (covering
4  clerical errors, assignments of rights, physical exams or autopsies, and time frames for legal actions).
5  Then the policy defines the "losses" that will result in payment of benefits. *Id.* at 8-10.

6  For example, under *Accidental Death and Dismemberment Benefit*, the policy "pay[s] benefits"
7  for injuries caused by an accident that results in any of the following "losses:"

8  **Loss**                                             **Benefit**
9  Life . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100% of the Principal Sum
   Two or more members . . . . . . . . . . . . . . . 100% of the Principal Sum
10 One member . . . . . . . . . . . . . . . . . . . . . . .  50%  of the Principal Sum

11 *Id.* at 9. Similarly, under *Seatbelt Benefit*, the policy "pay[s] benefits" for "loss of life" from car
12 accidents when seatbelts were in use. *Id.* at 10.

13 By contrast, the *Waiver of Premium Benefit* provision does not characterize disability as a "loss."
14 *Id.* at 11. Indeed, disability alone is not a "loss" under the policy: only death and qualifying
15 dismemberment (such as loss of a hand, foot, or eye) are. *Id.* at 6, 9, and 10. And only "covered
16 losses" trigger the 30-day notice required in *Payment of Claims*.

17 The policy as a whole supports this construction in other ways.

18 First, the *Waiver of Premium Benefit* provision requires proof of disability within 12 months to
19 obtain the waiver of premium. By contrast, the *Accidental Death and Dismemberment Benefit* and
20 *Seatbelt Benefit* provisions do not require this proof, and it is reasonable to apply the 30-day notice
21 procedure for "covered losses" in *Payment of Claims* only to "losses" in these provisions. The
22 conclusion thus is that the *Waiver of Premium Benefit* provision has its own notice procedure. This
23 conclusion is bolstered by the *Additional Provisions for Accelerated Benefits*, which also has its own
24 notice procedure of 60 days' notice for claims for accelerated benefits based on terminal illness. *Id.*
25 at 12. Boiled down, this means that some provisions – like *Waiver of Premium Benefit* – have their
26 own notice requirements.

27 Second, reading the 30-day notice of *Payment of Claims* into the timing requirements of *Waiver*
28 *of Premium Benefit* presents practical problems. The time lines are too different. Assuming

ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C 09-01665 (LB)
10

UNITED STATES DISTRICT COURT
For the Northern District of California

1  disability triggers the notice and proof requirements, here are the competing time lines.

| Days or months after disability | Event | |
|---|---|---|
| | *Payment of Claims* **Provision** | *Waiver of Premium Benefit* **Provision** |
| 30 days | Written notice of claim | |
| 90 days | Return completed claims forms | |
| 9 months | | Eligibility for premium waiver |
| 12 months | | Deadline for proof of disability |

It does not make sense that an insured claiming a premium waiver gives notice in 30 days, submits proof (the completed claims forms) in 90 days, becomes eligible only in 9 months, and submits proof again in 12 months. Not only is double proof counterintuitive, but also (as defense counsel partly acknowledged at oral argument) it makes no sense to have two proofs of loss because an insured is not eligible for a premium waiver for 9 months, well after the 30 days' notice and 90 days' proof. What does make sense is that the *Waiver of Premium Benefit* provision has its own proof provision: proof of disability in 12 months (3 months after an insured becomes eligible after being disabled for 9 months). In sum, Doe did not need to provide 30 days' notice to obtain the waiver of premium.

   4. Alternatively, the Court Construes the Ambiguous Term "Covered Loss" In Favor of Doe

In the last section, the Court concluded that "disability" is not a "covered loss" requiring 30 days' notice under the *Payment of Claims* provision. Alternatively, the Court holds that it is at least ambiguous whether it is a covered loss and construes the ambiguity against the drafter and in favor of the insured. *See Kunin*, 910 F.2d at 539. Plaintiff must comply only with the proof requirements in *Waiver of Premium Benefit* and not the notice and proof requirements in *Payment of Claims*.

   5. There is No Prejudice to LINA Under the Notice-Prejudice Rule

Defendants argue that Doe provided notice of his disability only in October 2008, when Plaintiff's counsel acknowledged CIGNA's (ultimately temporary) termination of disability benefits and asked whether CIGNA also was terminating the waiver of premium benefit. ECF Nod. 54 at 1-2, No. 52-5

1  (excerpted *supra* p. 5).  Excite cancelled the policy in June 1999, and providing coverage now –
2  Defendants assert – is actual and substantial prejudice under California's notice-prejudice rule, which
3  allows an insurer to avoid liability based on an untimely notice of a claim only if the insurer shows
4  actual, substantial prejudice due to the late notice.  ECF No. 54 at 1-2.

   Preliminarily, there is some evidence that Excite provided notice to LINA in 1997 and 1999.
LINA administered the long-term disability policy, received Plaintiff's application for benefits in
February 1997, and paid him benefits starting in June 1997.  LINA knew the Social Security
Administration found Plaintiff disabled as of January 31, 1997.  First Amended Complaint, ECF No.
33 at 2-3, ¶¶ 14-19.  Fair inferences from the record supports the conclusion that Excite
communicated with LINA.  For example, LINA cc'd Excite on Doe's disability approval letter in
June 1997.  ECF No. 52-3.  Also, Kristi Dinelli's March 1999 email to Plaintiff – that "we've already
waived the premium" and that no forms were needed – suggests that Excite gave notice to LINA.
ECF No. 52-4.  Corroboration might exist if Excite reduced its lump-sum payments of premiums to
LINA after Doe became disabled, but at oral argument, the parties suggested that they could obtain
no more information.  Based on this record, one could conclude that LINA had information about
Doe's disability and eligibility for the waiver of premium.

   Regardless, even if notice was late, LINA has not shown prejudice under the notice-prejudice
rule. Lack of timely notice is a defense to coverage only if the insurer can prove substantial prejudice
from the delay.  *See UNUM Life Ins. Co. v. Ward*, 526 U.S. 358, 366 (1999).  As the party seeking to
disavow coverage, the insurer has the burden of showing that it has been prejudiced by the delay.
*Root v. Am. Equity Specialty Ins.*, 130 Cal. App. 4th 926, 947 (2005).  "Prejudice is hard to show
under the rule."  *Id*.  There is no presumption or inference of prejudice based on evidence of delayed
notice alone.  Instead, "[t]he insurer must show actual prejudice, not the mere possibility of
prejudice."  *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 761 (1993).

   LINA argues only that providing coverage under a cancelled plan is prejudice.  ECF No. 54 at 8.
But as Plaintiff points out, notice in 1997 would not change the status quo now.  Excite still would
have cancelled the policy in 1999; and disabled employees who gave proof of disability would have
retained coverage and be entitled to waiver of the premiums.  *See* ECF No. 56 at 4.  Also, nothing

ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C 09-01665 (LB)
                                              12

1  suggests that Defendants' ability to investigate Plaintiff's disability was compromised by late notice.
2  The record shows extensive investigation of Plaintiff's disability, including in 2008 and 2009 when
3  LINA investigated whether Plaintiff still was disabled. *See* First Amended Complaint, ECF No. 33,
4  ¶¶ 20-59. The disability definitions in the life insurance and disability policies may differ, *see infra*,
5  but nothing suggests that LINA would have conducted its thorough investigation differently. In sum,
6  LINA has not established actual prejudice.

   6. Conclusion: Notice Was Sufficient

   The bottom line is that Plaintiff complied with the procedural notice requirements of the *Waiver of Premium Benefit* provision, and the notice-prejudice rule does not excuse liability.

   7. Clerical Error Provision Does Not Require Relief

   Plaintiff argues that Ms. Dinelli's email – that "we've already waived the premium" and that no forms were needed – demonstrates a clerical error in keeping records that should result in his coverage. More specifically, the life insurance policy's *General Provisions* contains this provision:

   > A person's coverage will not be affected by error or delay in keeping records of insurance under the plan. If such an error or delay is found, the premium will be adjusted fairly.

   It is not clear on this summary judgment record that the email is a record affording relief.

**B. Record About Disability Under the Life Insurance Policy Requires Remand**

   The Court's second inquiry is whether the summary judgment record establishes that Plaintiff is "disabled" under the life insurance policy. The Court concludes that it cannot tell based on this record, and it remands so that LINA (the plan administrator) can address the issue first.

   Following oral argument, on May 12, 2010, the Court ordered supplemental briefing on whether remand was appropriate. S*ee* ECF No. 60. The reasons are as follows. The summary judgment motion and the opposition mostly addressed whether Plaintiff had to give 30 days' notice for the premium waiver. Plaintiff mentioned that the definitions of "disabled" under the life insurance and long-term disability policies were similar, *see* ECF No. 51 at 7, and LINA argued that they were different, *see* ECF No. 54 at 7, but the arguments were short. Then, in the declaration in support of the reply brief, Plaintiff attached excerpts from CIGNA's 800-page long-term disability claim file to support the conclusion that there is no genuine issue of material fact that Doe is disabled under the

definition in the life insurance policy. *See* ECF Nos. 56 at 5, 58 and Exh. A. Even if the excerpts were sufficient to determine whether Plaintiff meets the definition of "disabled" under the life insurance policy (and the Court finds that they are not), Defendants had no opportunity to respond to them, making summary judgment problematic. Then, at oral argument, Defendants asserted that the plan administrator – not the Court – should make the determination initially about whether Plaintiff was disabled. The Court then ordered supplemental briefing. ECF No. 60.

The Court concludes that from a fact perspective and a legal perspective, LINA should make the initial determination about whether Plaintiff is disabled under the life insurance policy.

1. The Factual Record Is Insufficient To Evaluate the Definitions of Disability

The two policies define disability differently. Under the life insurance policy, a participant is disabled and entitled to a premium waiver "only if [he] can not do any work for wage or profit." ECF No. 52-1 at 11. The long-term disability policy's definition is as follows:

> **DISABILITY.** You will be considered Disabled if because of Injury or Sickness you are unable to perform all the material duties of your regular occupation; and after Monthly Benefits have been payable for 24 months, you are unable to perform all the material duties of any occupation for which you are or may reasonably become qualified based on your education, training, or experience.

The modest excerpts from the 800-page claim file are insufficient to evaluate whether Doe is disabled under the life insurance policy's definition.

Plaintiff nonetheless argues that life insurance policy's definition mirrors the Social Security regulations, *see* 42 U.S.C. § 423(d)(1)(A) & (2)(A), and that therefore, the Social Security Administration's determination that Doe was disabled resolves the issue. ECF No. 52 at 11. But a Social Security Administration award is not necessarily binding on a plan administrator. *See Seleine v. Fluor Corporation Long-Term Disability Plan*, 598 F. Supp. 2d 1090, 1104 (C.D. Cal. 2009) (citing *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1285 (9th Cir. 1990) and *Moskowite v. Everen Capital Corp.*, 2005 WL 1910941, at *4 (N.D. Cal. 2005)). And again, the Court cannot tell from this record that no genuine issue of material fact exists with respect to disability.

2. Remand Is Appropriate to the Plan Administrator

Defendants argue that LINA never determined that Plaintiff was disabled under the definition in the life insurance policy, and LINA must apply the insurance policy before the Court can. ECF No.

ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C 09-01665 (LB)

14

1  61 at 1. Plaintiff counters that remand is inappropriate because LINA has had ample opportunity to
2  determine whether Plaintiff is disabled and eligible for the waiver of premium. ECF No. 62 at 2-3.

3  In support of its argument that remand is appropriate, Defendants cite cases where the courts
4  remanded to the plan administrator for the initial determination about whether an insured was
5  disabled under the insurance policy's definitions. *See* ECR No. 61 at 4 ("Ninth Circuit has mandated
6  remand") (collecting cases). For example, in *Saffle v. Sierra Pacific Power Company Bargaining*
7  *Unit Long Term Disability Income Plan*, the district court held that the benefits committee – which
8  had discretion to interpret and apply the plan – abused its discretion by construing the disability
9  definition contrary to the plan's plain language. *See* 85 F.3d 455, 456-58 (9th Cir. 1996). The Ninth
10 Circuit affirmed the district court's finding that the benefits committee construed the disability
11 definition arbitrarily, but determined that the district court should have remanded to the committee to
12 apply the properly-construed plan to the insured's application for benefits. *Id.* at 460-61 (citing
13 *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948 (9th Cir. 1993) *and Mongeluzo*, 46 F.3d 938).

14 Similarly, Defendants identify other cases where district courts have remanded claims to plan
15 administrators for initial decisions about disability. *See Mongeluzo,* 46 F.3d at 944 (when plan
16 administrator misconstrues disability terms that the court construes more narrowly, the court may
17 remand to the administrator to determine disability under the new standard); *Minton v. Deloitte &*
18 *Touche USA LLP Plan,* 631 F. Supp. 2d 1213, 1221 (N.D. Cal. 2009) (remanding for disability
19 determination when MetLife had not yet determined whether the insured was disabled under a higher
20 standard for disability); *Lavino v. Metropolitan Life Ins. Co*., No.CV 08-2910 SVW, 2010 WL
21 234817 at *13 (C.D. Cal. Jan. 13, 2010) (same); *Seleine,* 598 F. Supp. 2d at 1103-04.

22 Plaintiff argues that these decisions involve plan administrators with discretion to interpret and
23 apply policies. By contrast, Plaintiff argues, LINA has no discretion, and thus the Court owes no
24 deference to the plan administrator and can decide the issue itself. ECF No. 62 at 4-6.

25 Except *Mongeluzo*, Plaintiff's cases do involve policies that confer discretion on the plan
26 administrator. In *Mongeluzo*, however, the plan administrator had no discretion, and the district court
27 reviewed *de novo* the administrator's decision that the insured should not receive disability benefits
28 after 24 months. *See* 46 F.3d at 942. The insured there challenged the denial of disability benefits

ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C 09-01665 (LB)
15

1  after 24 months on two grounds: (a) the "mental illness" and "functional nervous disorder"
2  limitations on disability benefits were ambiguous and should be construed against the drafter; and (b)
3  new evidence supported his claim for disability benefits beyond 24 months. *Id.* at 941.  Without
4  addressing the arguments about ambiguity, the district court declined to consider the new evidence,
5  upheld the plan administrator's decision denying benefits, and ruled in favor of the plan. *Id.* at 942.

6  On appeal, the Ninth Circuit held that the limitations were ambiguous and construed them
7  narrowly.  That meant that a genuine issue of material fact existed as to whether the insured's
8  symptoms met the narrower definition.  Also, because the administrator and district court did not
9  recognize that the terms were ambiguous, they did not make proper fact findings about the nature of
10 the disability. *Id.* at 943.  The Ninth Circuit also held that a district court – in a *de novo* review of a
11 plan administrator's decision – can hear new evidence not part of the administrator's record "in
12 certain circumstances to enable the exercise of informed and independent judgment."  Those
13 circumstances existed in *Mongeluzo* to enable an "adequate *de novo* review of the [administrator's]
14 benefit decision" because a misconception of the law and the narrower definition of the "mental
15 illness" limitation required reevaluation of the evidence. *Id*. at 943-44.  The Ninth Circuit noted that
16 the district court had discretion "to remand to the plan administrator for an initial factual
17 determination." *Id*. at 944.

18 Like the plan administrator in *Mongeluzo*, LINA misconstrued the provisions of the policy.  Also,
19 in *Mongeluzo*, the plan administrator never considered all evidence that the Ninth Circuit deemed
20 relevant to determining disability, and here, LINA never considered the disability evidence at all.
21 Cases – including *Mongeluzo* – establish that the Court may remand to LINA for the initial decision
22 about whether Plaintiff is disabled under the insurance policy.  Furthermore, ERISA gives courts a
23 wide range of remedial powers, including the authority to remand to a plan administrator for factual
24 determinations. *See Beaver v. Bank of the W. Welfare Benefits Plan*, No. C 09-02177 WHA, 2010
25 WL 1030464, at * 11 (N.D. Cal. Mar. 18, 2010) (*citing Williamson v. UNUM Life Ins. Co.*, 160 F.3d
26 1246 (9th Cir. 1998)).  Given that the Court does not have the full record about disability, and LINA
27 has the full claims file and can develop the evidentiary record, remand is appropriate.

28     3. The Remand Is For 60 Days

ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C 09-01665 (LB)

1    Plaintiff essentially argues that remand is inappropriate because LINA has refused to make fact findings about disability. ECF No. 62 at 5-6. The Court understands that starting in August 2008, Plaintiff had to fight LINA's temporary suspension of his long-term disability benefits. But there is no evidence that LINA delayed wrongfully in addressing Plaintiff's claim for a waiver of the premium for the life insurance policy. Instead, only in October 2008 (in Plaintiff's counsel's letter to CIGNA) did the issue come up. ECF No. 52-5. CIGNA investigated the claim until October 2009, which is a time period that also encompassed the reinstatement of disability benefits in July 2009. LINA's denial of the waiver of premium benefit rested only on its interpretation of the policy's notice requirements and is not behavior that persuades the Court that it should consider a fact issue before the plan administrator considers it.

Still, the Court appreciates Plaintiff's concern that LINA process his claim expeditiously. The Court is confident that defense counsel will facilitate a speedy determination by the plan administrator. To that end, the parties shall file a joint case management statement in 60 days advising the Court of the plan administrator's decision (or progress toward making that decision).

## V.  CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Summary Judgment Motion. To the extent that Plaintiff contends he was not required to give 30 days' notice under the policy's *Payment of Claims* provision, the Court **GRANTS** the motion. The *Payment of Claims* provision does not apply; Plaintiff complied with the procedural requirements of the *Waiver of Premium Benefit* provision; notice was effective; and the notice-prejudice rule does not excuse liability. To the extent that Plaintiff contends that he is disabled (and thus does not have to pay insurance premiums and is covered under the insurance policy), the Court **DENIES** the motion **WITHOUT PREJUDICE**. The Court **REMANDS** this matter to the plan administrator to determine whether Plaintiff is disabled under the life insurance policy. The parties shall file a joint case management statement by October 28, 2010, advising the Court of the plan administrator's decision (or progress toward making that

/ / /

/ / /

/ / /

ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C 09-01665 (LB)
17

decision).  The Court sets a further case management conference for November 4, 2010, at 1:30 p.m.

**IT IS SO ORDERED.**

Dated: August 25, 2010

_____
LAUREL BEELER
United States Magistrate Judge